## GEORGIA RAILROAD COMPANY *v.* BALDONI.

1. A placard or notice posted by a railroad company at its ticket-office, announcing that tickets of a certain class must be used on the day of sale, is not admissible in evidence in favor of the company in a suit against it by a passenger for an alleged wrongful ejection from a train on the ground that the ticket had expired, unless it be shown that the passenger had read the placard or had notice of its contents.

2. Where such a passenger had procured his trunk to be checked two days before he undertook to use the ticket, and, when he attempted to use it, was ejected on the ground that the ticket had expired, and long subsequently it was ascertained that his trunk contained merchandise instead of baggage, it was not error for the trial judge to refuse to charge the jury that on account of this fraud the company had a right to cancel the contract and could not be held liable for ejecting the passenger.

3. Under the evidence disclosed by the record, the verdict was so excessive as to indicate bias and prejudice on the part of the jury.

Submitted May 1,— Decided July 22, 1902.

Action for damages.  Before Judge Nottingham.  City court of Macon.  November 2, 1901.

*Joseph B. & Bryan Cumming* and *Hardeman, Davis, Turner & Jones,* for plaintiff in error.
*Minter Wimberly, M. R. Freeman,* and *Roland Ellis,* contra.

SIMMONS, C. J.  Baldoni, a peddler of balloons and confetti, bought a ticket over the Georgia railroad from Macon to Augusta. He did not take the train on the day the ticket was purchased, but

two days thereafter started on his journey. When, a few miles. from Macon, Baldoni presented his ticket to the conductor, the latter informed him that the time within which the ticket could be used had expired, that the rules of the company limited the use of the ticket to the day on which it was purchased, and that therefore he could not ride upon it. Baldoni had no notice of this rule of the company, and there was no limitation expressed on the ticket. Baldoni insisted that he had paid his money and was entitled to ride. After some further conversation, the conductor informed him that they were approaching the first station outside of Macon, and that he must get off of the train. When the station was reached Baldoni objected to leaving the train, but obeyed the orders of the conductor and alighted. The conductor seems to have called the agent at the station and told him of putting Baldoni off and requested him to flag the incoming train so that Baldoni could return to Macon. This Baldoni denied, claiming that he had to alight hurriedly in the darkness and find his way to the agent. At any rate, the incoming train was stopped, and Baldoni, paying a few cents for his fare, returned to Macon. He reached Macon before ten o'clock in the evening, having been absent therefrom but two or three hours. Baldoni then attempted at several different boarding-houses to get lodging for the night, but was refused. He did not go to a hotel, because he was not sufficiently well dressed, and was afraid the rates would be too high. He finally slept in the city park on some straw. He became quite cold during the night, and early in the morning warmed himself in the station of another railroad company. The ejection from the train was on Saturday night. Baldoni remained in Macon all day Sunday, purchased another ticket from the Georgia Railroad Company, and, just twenty-four hours after his first attempt to make the trip, boarded a train for Augusta, which place he reached on Monday morning. He thus lost one day, Sunday, on account of the action of the conductor. At times Baldoni's business netted him as much as $100 per day, and at other times nothing. Augusta was not at that time a good place for his business. He brought suit against the company for damages, and the jury awarded him $1,250. The defendant moved for a new trial, and the motion was overruled. The defendant excepted.

1. On the trial the defendant offered in evidence a placard or

notice, printed in very large type and addressed to the public, in which, among other things, it was stated that "all one-way tickets will be limited to date of sale." A copy of this placard was posted at the ticket-office in the depot, and another near the entrance to the depot. The ticket sold to Baldoni had no limitation expressed upon it, and this placard was offered to show that Baldoni had notice of the regulation of the company requiring such tickets to be used on the day of sale. There was no proof that the plaintiff could read, or that he had read this notice or knew of its contents. There is nothing to show that his attention was in any way directed to this placard. We think that a placard of this character is not sufficient of itself to put a passenger on notice of the rules and regulations of the company in regard to the time limit of their tickets. In these days of hurry and bustle passengers have little time to give to reading the notices exposed to their gaze in ticket-offices and stations. Very few passengers, if any, stop to read such notices. Their usual object is to purchase their tickets, and, boarding the train, to depart upon their journeys. It would not do to charge them with notice of the rules and regulations of the company simply because a copy of such rules or regulations was posted at the ticket-office. Notice of the rule or regulation must be in some way brought home to a passenger before he can be charged with it. The court was therefore right in rejecting this evidence.

2. Pending the trial it was ascertained that the plaintiff had checked his trunks over the road of the defendant by virtue of his ticket, which he showed to the baggage-master, two days before he attempted to use his ticket for passage; and that the trunk contained balloons, confetti, and other merchandise in which plaintiff dealt. The court was requested by counsel for the defendant to charge the jury that this was a fraud upon the company, and gave it the right to cancel the contract of carriage with Baldoni, and that therefore it could not be held liable for ejecting him from the train. The court refused to so charge, but charged to the contrary. In this the court did not err. The contract made with the railroad company was to transport the purchaser and his baggage. The fact that the purchaser had put merchandise as well as baggage in his trunk would not authorize the company to eject him from its train. The company could have refused to carry the

trunks unless the passenger had paid the freight charges on the merchandise in them.    After the trunks were checked, it might have had the right to notify the passenger that he would not be carried unless the freight was paid, this notice being accompanied by an offer to return what money was due him.    After the trunks had reached their destination the company might have refused to deliver them until the proper freight charges had been paid.    If the character of their contents was not discovered until after delivery, the passenger was still liable to the company in an action for the freight charges.    The company did none of these things.    We think that a passenger's ticket is not avoided and rendered worthless by the mere fact that he has checked in his trunk articles which are not baggage, any more than if such trunks should happen to weigh more than the company allows to be carried as baggage.    Moreover, it appears from the plaintiff's evidence that the company, by its agents, did not undertake to treat the contract as canceled, but ejected plaintiff on the ground that the time limit of his ticket had expired.    Having ejected him on this ground, it is doubtful if the company could set up fraud in the procurement of the contract, or a violation of the contract, as a justification of the illegal ejectment.    Be this as it may, the company did not pursue any of the remedies it had, and can not rely upon the nature of the contents of the plaintiff's trunks as a justification of his ejection.

3. One ground of the motion for new trial complains that the verdict is excessive.    We think this ground well taken.    While it is true that the conductor of the train had no legal right to eject the plaintiff because of the expiration of the time limit put upon his ticket by rules of the company of which the plaintiff had no notice, the evidence of three witnesses for the defendant showed that there was no force used, but that the plaintiff obeyed the order of the conductor and alighted at the station.    The plaintiff himself testified that the conductor took hold of him and got the best of him, and he surrendered, but even then it does not appear that he was in any way injured or hurt physically.    He did not lose any time from the sale of his goods by reason of the delay, the day lost being Sunday.    He slept in the park in Macon because, according to his testimony, the boarding-house keepers refused to entertain him and he was not sufficiently well dressed to go to a hotel.    According to his testimony there was but one other passenger in the

coach from which he was ejected. Under these facts, we think the verdict for $1,250 was so excessive as to show bias and prejudice in the minds of the jury. While railroad companies should be held to strict accountability for a violation of the rights of their passengers, we think that juries should not be allowed to run wild in the assessment of damages in cases like the present. Taking into consideration all the facts and circumstances disclosed by the evidence, we think the verdict was far in excess of what it should have been.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*