# Richmond.

## CLINCHFIELD COAL CO. v. POWERS.

November 21, 1907.

1. SPECIFIC PERFORMANCE—*When it will be Decreed.*—All applications for the specific performance of contracts are addressed to the sound judicial discretion of the court, regulated by established principles, and, to warrant enforcement, the contract must be clearly ascertained and distinctly proved, and must be reasonable, certain, legal and mutual, and founded on a valuable, or at least meritorious consideration; and the complainant must not have been backward, but ready, desirous, prompt and eager.

2. SPECIFIC PERFORMANCE—*Meeting of Minds on Subject and Terms of Contract.*—Where the court is unable from all the circumstances of the case, to say whether the minds of the parties met upon all the essential particulars of a contract, or, if they did, then cannot say exactly upon what substantial terms they agreed, or trace out any particular line where their minds met, specific performance will be refused.

Appeal from a decree of the Circuit Court of Dickenson county.  Decree for complainant.  Defendant appeals.

*Reversed.*

The opinion states the case.

*J. Norment Powell, Ayers & Fulton* and *W. H. Rouse,* for the appellant.

*A. A. Skeen,* for the appellee.

KEITH, P., delivered the opinion of the court.

J. H. Powers filed his bill in the circuit court of Dickenson county, asking a specific performance of a contract alleged to have been made by him for the sale of a certain parcel of land to the Clinchfield Coal Company. The Clinchfield Coal Company filed its answer, denying the plaintiff's equity.

The facts of the case are as follows: One Owens, as agent for H. G. Morison, entered into negotiations with J. H. Powers, which resulted in a written contract, dated October 14, 1905, to the following effect: That Powers and wife, parties of the first part, bargained and sold to H. G. Morison, and covenanted to convey by deed of general warranty, and free from all encumbrances and clouds upno the title, to the party of the second part " the following tract or parcel of land situated, lying and being in the county of Dickenson, state of Virginia, on the waters of Frying Pan Creek, adjoining the lands of Clinchfield Coal Company, J. P. Sutherland, S. D. Sutherland, and others, and bounded as follows: All coal heretofore sold and conveyed are excepted from this contract, and all poplar trees branded are excepted from this contract; containing 500 acres, more or less, the acreage to be determined by actual survey, and being the same acquired by the parties of the first part by deed from Henry Sutherland.

"The terms of this sale are $20.00 per acre for the said lands, as the acreage is determined by actual survey hereafter to be made, of which purchase price the sum of $25.00 is paid cash in hand, the receipt of which is hereby acknowledged, and the balance is to be paid in three equal payments, the first of which is to be made as soon as the title can be examined, a survey made, and the deed herein provided for executed and delivered, and the remaining payments to be made in six and twelve months from this date.

"In further consideration of the sum of $25, this day paid, the receipt of which is hereinbefore acknowledged, it is agreed

that the said party of the second part shall have the right for a period of sixty days from this date, to elect whether he will purchase said land upon the terms herein stated, and that if the said party of the second part, or his assigns, does, within the said period of sixty days from this date, notify the said parties of the first part of his intention to purchase the same, then the said parties of the first part shall be bound to convey, and the said party of the second part or his assigns shall be bound to pay for and accept said land, upon the terms hereinbefore stated." The remainder of this contract is omitted, as not being material to the decision of the question before us.

On December 11th, and within the sixty days, the Clinchfield Coal Company, through W. H. Rouse, its attorney, sent the following notice to Powers:

"You are hereby notified that it is the intention of the Clinchfield Coal Company to take and pay for that certain tract of land lying in Dickenson county, Virginia, on the waters of Frying Pan Creek, adjoining the lands of the Clinchfield Coal Company, J. P. Sutherland, S. D. Sutherland, and others, containing 500 acres, more or less, in accordance with the terms and provisions of a contract executed by you on the 14th day of October, 1905, to H. G. Morison, and by said Morison assigned to the said company. This 11th day of December, 1905.

"CLINCHFIELD COAL CO.,

"By W. H. ROUSE, *Attorney.*"

On the 10th of July, 1906, Powers and wife tendered to the Clinchfield Coal Company a deed in execution of their contract, as understood by them, but it appearing that, by this deed, the grantors did not convey the whole of that certain tract of land lying in Dickenson county, as described in the contract, but only the western portion thereof, containing 411 acres, reserving to themselves something more than 200 acres of the tract, upon which were the improvements and level land, constituting the

most valuable and desirable portions, the Clinchfield Coal Company refused to accept the deed; and thereupon this suit was instituted.

Owens, who conducted the negotiations with Powers, was in no sense a general agent, either of Morison or of the Clinchfield Coal Company. His authority was limited to procuring an option upon certain property. The option contract of October 14, 1905, is, upon its face, a covenant to convey, should its terms be thereafter accepted, a "tract or parcel of land, situate, lying and being in the county of Dickenson, state of Virginia, on the waters of Frying Pan Creek, adjoining the lands of Clinchfield Coal Company, J. P. Sutherland, S. D. Sutherland, and others, * * * containing 500 acres, more or less, the acreage to be determined by actual survey, and being the same acquired by the parties of the first part by deed from Henry Sutherland." The written acceptance conformed to this offer *in ipsissimis verbis.* Owens had no authority, as agent, to bind Morison or the Clinchfield Coal Company by any verbal agreement or understanding not embodied in the paper of October 14, 1905; nor does he, in his evidence, claim that Morison or the company knew before the papers were signed that Powers did not intend to sell and convey the entire tract, except so far as that information may be inferred from his letter to Morison, to which we will presently advert.

*Q.* 21. "Then, in your letter to Morison you did tell him that Powers did not want to sell all of his tract of land, but would sell a part, and asked him (Morison) what you should do about taking the contract? Is this correct?"

*A.* "My letter to Mr. Morison, I believe, explained to him. I don't think I explained to him the part he wanted to sell, but that he would sell 500 acres, more or less. I don't think I explained to him the part that he wanted to sell or how the lines was to be run."

Morison, in his deposition, says: "I had absolutely no information from any one that the contract covered less than the

entire boundary owned by James H. Powers." And, upon being asked, "When and how did you first hear of such a claim as is referred to in the last question?" he answered: "Some time about the first of January, 1906, while at Clintwood, Mr. L. D. R. Owens, in a conversation, gave me to understand that James H. Powers was intending to or had withheld a valuable part of his tract of land on Frying Pan, situated around his house, and taking in the forks of the creek."

The letters referred to are as follows:

"Bee, Va., October 6, 1905.

"*H. G. Morison, Esq.,* Bristol, Va.-Tenn.:

"MY DEAR SIR,—I have been to see Mr. J. H. Powers, and have his promise for a contract for about 500 acres of his land, crossing the creek just above his house, and running to the top of the ridge on east side of Frying Pan, connecting with S. D. Sutherland tract, at the mouth of Spruce Pine Branch. He now is willing to take $20.00 per acre. This land has very good cull poplar, and lots of nice oak. Advise me at once.

"Yours very truly,

"L. D. R. OWENS."

To this letter Morison replied October 10, 1905:

"DEAR SIR,—I beg to acknowledge receipt of your letter, advising that Mr. J. H. Powers is willing to trade his land. Please take a contract upon the five hundred acres as indicated in your letter, and then, if at all possible, obtain a contract from him upon the remainder of his land, allowing him to farm and use it during his lifetime at the best figure you can get, which I presume will be more than $20.00 per acre. Please close this matter just as quickly as you can, and advise Mr. Rouse. I think you have done exactly right in keeping this matter so well before you."

The pleadings do not make a case for the reformation of a

contract upon the ground of fraud, accident or mistake. There is, it is true, an allegation that, by mutual mistake, the land embraced in the option contract is described as adjoining the lands of J. P. Sutherland, when such, as it seems, is not the fact; but this is immaterial to the issue before us. The bill is filed to compel the specific performance of a contract in writing, clear and explicit in its terms, which the defendant avers in its answer, it is willing and ready to perform in accordance with its obvious meaning, but which the plaintiff asks may be interpreted by the interpolation of the verbal understanding between the complainant and the agent of the defendant, with whom he contracted, whose authority was limited to the procuring of an option, and who had no inherent power to bind his principal by any understanding, representation or agreement not embodied in the written option contract, of which verbal representations the other parties to the contract had no notice except such as might be derived from the correspondence heretofore given between Owens and Morison, which leaves the subject in the same obscurity in which it was found, for in it Morison instructs Owens to obtain an option upon the whole tract if possible, and the contract actually entered into in obedience to this letter of instruction embraces the entire tract. The law, in such a case, seems to be plain.

"All applications to the court to compel specific performances are addressed to the discretion of the court—a sound judicial discretion, regulated by the established principles of the court—and the contract must not only be distinctly proved, but it must be clearly and distinctly ascertained; it must be reasonable, certain, legal, mutual; upon valuable, or, at least, meritorious consideration, and the party seeking specific performance must not have been backward, but ready, desirous, prompt and eager." *Dunsmore* v. *Lyle,* 87 Va. 393, 12 S. E. 610.

This case is well within the principle of *Blanchard* v. *Railroad Company,* 31 Mich. 443, 18 Am. Rep. 142, in which it is said: "Where the court is unable, from all the circumstances

of the case, to say whether the minds of the parties met upon all the essential particulars, or if they did, they cannot say exactly upon what substantial terms they agreed, or trace out any practical line where their minds met, specific performance will be refused."

For these reasons, the decree of the circuit court must be reversed; and this court, entering such decree as the circuit court ought to have entered, dismisses the bill of complainant.

*Reversed.*