Statement.

---

# Richmond.

COFFMAN v. LIGGETT'S ADMINISTRATOR AND OTHERS.

November 21, 1907.

Absent, Cardwell, J.

1. ASSIGNMENTS—*Delivery—Case in Judgment.*—In order to constitute a valid assignment of a chose in action, the assignor must part with his power of control over it, and the evidence of the assignment must be so delivered as to be irrevocable by the assignor. In the case in judgment, the evidence does not establish a delivery of either the chose in action or of the assignment thereof.

2. ASSIGNMENTS—*Contest Between Assignees—Notice—Legal Title.*—As between two *bona fide* assignees for value of an insurance policy, the second assignee will be preferred where it appears that he not only took his assignment in good faith and for full value and without notice or knowledge of the prior assignment, but also gave notice of his assignment in writing to the insurer, and was recognized and accepted by it in writing as such assignee, and acquired the complete legal and equitable title to the policy; whereas, the first assignee did not even know of the existence of his assignment and hence took no steps to protect his interest. Where equities are equal, the law will prevail.

Appeal from a decree of the Circuit Court of Rockingham county. From a decree in favor of Lurty, Coffman appeals.

*Affirmed.*

The opinion states the case.

*Harnsberger & Harnsberger,* for the appellant.

*Sipe & Harris,* for appellee.

HARRISON, J., delivered the opinion of the court.

The life of Winfield Liggett was insured, for his own benefit, by policy No. 2996, in the Life Insurance Company of Virginia, for the sum of $3,000, which has been paid, and is now under the control of the circuit court of Rockingham county in this suit. The matter in controversy is the right of priority in the distribution of this fund between certain creditors of Winfield Liggett, the insured, each of whom claims, under an assignment of the policy from which the fund was derived, made by the insured in his lifetime.

The record shows that on the 29th day of November, 1901, while the policy was still in his possession and under his control, the insured assigned and transferred the same to W. S. Lurty, as collateral security for the payment of a bond for $1,000 executed by Liggett to Lurty. It further appears that on the 12th day of September, 1904, the entire policy was, for value received, assigned and transferred by the insured to W. S. Lurty, subject only to a debt of $274 and its interest, borrowed money due from the insured to the company. The completeness of Lurty's purchase of the policy, under the assignment and transfer last mentioned, cannot be questioned. Due notice of this assignment, acknowledged before a notary public, was given in writing to the company, and recognized and accepted by it in writing. Prior to this assignment to Lurty of September 12, 1904, the policy had been, in January, 1904, assigned by the insured to N. W. Berry, to secure him as endorser of a negotiable note for $670.

After the death of Winfield Liggett, which occurred on the 16th day of February, 1905, there was found with his papers in his office safe, the following paper, dated February 26, 1895, signed by him, under his hand and seal:

"I hereby transfer and assign to Maggie G. Coffman so much of my life insurance policy, in the Life Insurance Com-

pany of Virginia, as will be sufficient to pay to her whatever amount I may owe her at the date of my death."

It appears that several years before the date of this paper Maggie G. Coffman had placed in the hands of Winfield Liggett, who was a practicing attorney of the Harrisonburg bar, certain funds to be invested by him as her attorney. These funds were invested at first, but were afterwards collected by Liggett and appropriated to his own use, he thereby becoming the debtor of Maggie G. Coffman, which relation he continued to occupy until his death.

The sole question to be determined is whether, under the circumstances disclosed by the record, Maggie G. Coffman, the appellant, is entitled to priority in the distribution of the fund arising from this policy; it being insisted that she has the first right because the assignment in her favor was prior in time to that under which the appellee Lurty claims.

It is contended on behalf of the appellee, that there was no complete assignment of this policy to the appellant; that the alleged assignor retained the power of revocation by retaining the paper relied on in his possession, and never delivering the same; and that, having his power of revocation, he had the power to make a subsequent valid assignment of the policy. On the other hand, it is contended, on behalf of the appellant, that the assignor, Liggett, was her trusted attorney and agent to invest her funds; that, when he wrote the assignment of the policy for her benefit, and placed the same with her papers in his safe, it was a constructive delivery; and that he thereafter held the paper as her agent, without power to impair her rights in the policy by a subsequent assignment thereof.

So far as the record shows, the existence of the paper under which the appellant claims, was never known to any one but its author until after his death, when it was found by his administrator, together with a statement of his indebtedness to the appellant and a letter relating to her investment, in a filing envelope in the decedent's office safe. It is not clear

from the record that appellant knew that Liggett had reduced her investment to money and was himself her debtor. She does not appear to have ever demanded any security of Liggett as her debtor, nor does he appear to have ever promised to furnish any security; nor was any mention or intimation with respect to the policy in question ever made to her by him, although he appears to have written her letters with respect to her investments. The paper relied on as an assignment was kept within its author's own knowledge, and within his own exclusive power and control. There was never a moment that appellant had any power or control over the paper.

It is true, as insisted, that delivery is a matter of intention, and that the form of assignment is not material. *Skipwith's Ex'or* v. *Cunningham,* 8 Leigh 271, 31 Am. Dec. 642; *Tatum* v. *Ballard,* 94 Va. 370, 26 S. E. 871. But the evidence does not show that Liggett ever intended to deliver the alleged assignment to the appellant. He did send her word not to be uneasy about her investments, that her money was safe; but all of his communications studiously avoid any mention of the policy or any intention to deliver the alleged assignment. The absence of intention to deliver the paper in question is further shown by the fact that Liggett retained possession of the policy, used it as collateral security, borrowed money upon it, and finally transferred and assigned it to the appellee for full value received. Whatever may have been Liggett's purpose when he first wrote the paper now in controversy, that purpose was never consummated, because of his power to recall it; and when the absolute assignment was made to Lurty, the purpose theretofore existing, if any, to assign to appellant, was abandoned.

The rules of the insurance company require that an assignment of its policies shall be made in duplicate and sent to the company for acknowledgment, when one is returned to the assignee of the policy, and the other retained by the company. This was never done with respect to the alleged assignment under which appellant claims. The appellee acquired, for value

received, the complete legal and equitable title to the policy, giving the company due notice of the assignment to him without any notice or knowledge of the paper under which appellant claims, and without any means of ascertaining that such a paper was in existence.

In Pomeroy's Equity it is said that a subsequent assignee takes superior to a prior equity when the second assignee, in good faith and without notice of a prior outstanding equity, protects or supports his own interest by obtaining a legal title, or legal position, and that in such a case, the general doctrine that an assignment is subject to outstanding equities of third persons, does not apply. 2 Pom. Eq. sec. 698, and note.

The Supreme Court, considering the same subject, points out that the general rule, "first in time, best in right," has exceptions, and that a subsequent assignee of a pure thing in action will be protected by a court of equity in any advantage which he has gained by his own diligence, or by the neglect of a prior assignee. In a well-considered case, the court says: "Corcoran's assignment was fair, and accepted on his part without knowledge of Judson's; nor is the contrary alleged in the bill. And assuming Judson's to be fair also, and that no negligence can be imputed to him, then the case is one where an equity was successively assigned in a chose in action to two innocent persons, whose equities are equal, according to the moral rule governing a court of chancery. Here, Corcoran has drawn to his equity a legal title to the fund, which legal title Judson seeks to set aside, and asks an affirmative decree in his favor to that effect. Now, nothing is better settled than that this cannot be done. The equities being equal, the law must prevail." In this case, it is further said: "The assignment was held up, and operated as a latent and lurking transaction, calculated to circumvent subsequent assignees, and such would be its effect on Corcoran, were priority accorded to it by our decree." *Judson* v. *Corcoran,* 17 How. 612, 15 L. Ed. 331. See also *Bayley* v. *Greenleaf,* 7 Wheat. 46, 5 L. Ed. 393; *Graham*

*Paper Co.* v. *Pembroke,* 124 Cal. 117, 56 Pac. 627, 71 Am. St. Rep. 26; 44 L. R. A. 632; *Palmer* v. *Merrill,* 6 Cush. 282, 52 Am. Dec. 782.

The decisions of this court are, we think, to the effect that the assignor of a chose in action must part with the power of control over the thing assigned, and that the evidence of assignment must be so delivered as to be irrevocable by the assignor. *Tatum* v. *Ballard, supra.*

The case of *Spooner* v. *Hilbish,* 92 Va. 333, 23 S. E. 751, involved the validity of the gift of an insurance policy by the insured to a third party. The doctrine was there announced with respect to a gift, which was without consideration, that there must be a delivery of possession of the thing given, or the means of obtaining it, so as to make the disposition of it irrevocable.

There is nothing more common in the business life of the present day than the assignment of insurance policies as collateral security for borrowed money. If a secret equity, such as that sought to be enforced by the appellant, could prevail against a bona fide purchaser of a policy, such as Lurty is shown to have been, the result would be disastrous to the use of these policies as a means of borrowing money.

We are of opinion that, under the facts and circumstances of this case, there was neither an actual nor a constructive delivery of the assignment in question to the appellant, or to any one for her benefit. The circuit court, therefore, did not err in holding that the transfer of the policy to W. S. Lurty was to be preferred in equity and right to the alleged assignment thereof to appellant, and its decree must be affirmed.

*Affirmed.*