# Richmond

THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND, A
CORPORATION v. J. L. Q. MOORE, ET ALS.

April 21, 1941.

Record No. 2336.

Present, All the Justices.

*Coleman & Coleman,* for the appellant.

*S. H. Bond, Richmond Bond* and *Hagan Bond,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This is a controversy over the proceeds of two life insurance policies, issued by the Atlantic Life Insurance Company, on the life of J. L. Q. Moore. One policy of $1,000 was issued August 17, 1918 and the other policy of $2,000 was issued April 19, 1924. Both policies contained provisions whereby they matured as endowments, payable to the insured, if living, one at the expiration of twenty years from its date and the other upon the insured attaining the age of sixty-five years. The first policy had as its maturity date August 17, 1938, and the other April 19, 1939. In the event of the prior death of the insured, they were payable to Lovely J. Moore, wife of the insured, or any substituted beneficiary.

The Fidelity and Deposit Company of Maryland, hereinafter referred to as the plaintiff, recovered a judgment against J. L. Q. Moore in the Circuit Court of Scott County, Virginia, on the 6th day of December, 1935, for the sum of $8,154.94, with interest from October 26, 1932, and costs.

In September, 1938, the plaintiff instituted garnishment proceedings in which it was sought to subject the cash surrender value of the two policies of insurance to the part payment of its judgment. Mrs. Moore, the wife of the insured, having appeared and claimed a prior sale and assignment of the policies to her, the proceedings, by leave, were transferred to the chancery side of the court. The plaintiff, thereupon, filed a bill in chancery against Mr. and Mrs. Moore and the insurance company.

The bill alleged that the policies had been merely pledged to Mrs. Moore as collateral security for the payment of a sum of about $700, advanced by Mrs. Moore to her husband; that the plaintiff was entitled to the proceeds from said policies over and above the amount necessary for the repayment of that sum; that Moore was insolvent; that Mrs. Moore did not own any property except the indebtedness of her husband to her; and

that if she should be permitted to receive the full cash surrender value of the policies, the plaintiff would be defeated in the collection of the judgment. It prayed that Mrs. Moore and her husband be enjoined and restrained from surrendering the policies of insurance and converting the same into cash; that the Atlantic Life Insurance Company be enjoined and restrained from accepting the surrender of said policies and paying their cash values to either Mr. or Mrs. Moore; and that Mrs. Moore be required to assign to the plaintiff all of her rights in the policies in excess of the amount necessary to satisfy her lien against same.

The Moores filed their answer, in which they asserted that Mrs. Moore was the absolute owner of the policies and their proceeds.

The insurance company filed its answer disclaiming any interest in the subject matter of the controversy and stating that there was due from it, subject to the surrender of the original policies, which surrender had not then been made, the sum of $1,018.11 on one policy as of August 17, 1938, and the sum of $2,014.00 on the other, as of April 19, 1939, less an indebtedness of $546.60 advanced as a loan. It deposited the net sum of $2,485.51 into the treasury of the court, to be distributed under the order and direction of the court, upon the surrender of the policies, in full discharge of the insurer.

By agreement of the parties, the cause was submitted to the chancellor without a jury, and the evidence was taken *ore tenus*.

Upon consideration of the oral and documentary evidence, the chancellor, being of the opinion that Mrs. Moore had acquired both policies by purchase and was entitled to the full proceeds therefrom, except the sum of $492.04 paid by Moore as premiums after the date of his insolvency, entered a decree on February 6, 1940, awarding the sum of $1,943.47 to Mrs. Moore and the sum of $492.04 to the plaintiff. He directed that the costs of the suit be paid by the plaintiff and Mrs. Moore

respectively, in proportion to the amounts decreed to them.

To that ruling and decree the plaintiff excepted and was granted this appeal. Its contention is that the chancellor erred in failing to hold that the transfer and assignment of the policies was a mere pledge to secure Mrs. Moore only to the amount of her loan to her husband, and that it was entitled to the balance of the proceeds.

Mrs. Moore undertakes to assign cross-error to the award of $492.04 to the plaintiff. She made no objection or exception in the lower court to the decree, and cannot raise her objection for the first time in this court. Rules of Court 15, 21 and 22.

There is no dispute as to the law. The decision turns upon the facts. If, in this case, the policies were assigned merely as a pledge or as collateral security, then the pledgee can recover only to the extent of the money loaned. If they were sold, or their full value absolutely and unconditionally assigned, the purchaser or assignee is entitled to the full proceeds.

Before taking up the evidence, it may be observed that the bill of the plaintiff did not allege that the transaction between Mr. and Mrs. Moore was voluntary, fraudulent or without valuable consideration.

This status of the case is further emphasized by the record which shows that at the conclusion of the evidence the plaintiff moved for leave "to file a bill in chancery attacking as voluntary, fraudulent, and without valuable consideration, the alleged assignment of the benefits of the policy of insurance from J. L. Q. Moore to Lovely J. Moore, and for the further reason that said Fidelity and Deposit Company of Maryland asserts its right to subject the benefits now accrued under the policy to the extent of the premiums paid by J. L. Q. Moore on said policy since the date of his insolvency which right it does not have to assert in the instant proceeding." This motion was overruled. The plaintiff excepted; but the ruling is not here assigned as a ground of error.

In 1929, J. L. Q. Moore was the treasurer of Scott County, Virginia, and The Fidelity and Deposit Company of Maryland was surety on his official bond. Moore kept a part of the county's funds and his own on deposit with The Farmers and Merchants Bank of Clinchport, Virginia. In December of that year, that bank was closed and its affairs placed in the hands of a receiver for liquidation. It became necessary for Moore to borrow money to replace the county's funds on deposit in the closed bank. He borrowed $9,000 from The Peoples National Bank of Gate City, Virginia, evidenced by eight notes, with himself and wife, Lovely J. Moore, as co-makers, and several individuals as endorsers.

Mrs. Moore also had on deposit with The Farmers and Merchants Bank, at the time of its receivership, the sum of $2,500.75, her personal funds.

On December 30, 1929, Moore, individually and as treasurer, and his wife assigned all of their several accounts and money in the closed bank and all of the proceeds therefrom to The Peoples National Bank as security for the payment of the above mentioned $9,000. At this time Moore notified the insurance company that he wanted the above mentioned policies to be made payable to Mrs. Moore as beneficiary. The policies were delivered to Mrs. Moore, each bearing the following endorsement, made by the insurer, dated January 11, 1930: "At the request of the insured and/or assignee, dated January 9, 1930, the beneficiary under this contract is hereby changed to Lovely J. Moore, wife of the insured." Prior to that date the named beneficiary of the $1,000 policy was "Nellie Moore, wife of the insured", and of the other policy "the estate of the insured".

The insurance contracts each contained the following provisions:

"If this Contract has not been assigned the Insured may change the Beneficiary at any time by filing at the Home Office written request for such change on the Com-

pany's form, and by forwarding this Contract for endorsement of change.''

''Any assignment of this Contract must be made in duplicate, and one copy filed at the Home Office. The Company assumes no responsibility for the validity of any assignment.''

Moore testified that, in order to get his wife's consent to the assignment of her deposits, he made an absolute sale of the policies to her and delivered them into her possession; that she had since had exclusive possession of them; that it was a *bona fide* sale; and that he intended for her to get all of the proceeds therefrom, and for that reason notified the insurance company to make her the beneficiary. As he expressed it,—''It was just a fair trade, like swapping horses. I swapped insurance policy for her balance in the bank.'' He agreed to pay all future premiums; but being unable to meet them, he borrowed about $500 from the insurance company for that purpose, which amount was made an indebtedness against one of the policies. He further said that at the time of the assignment he was not indebted to the plaintiff. He estimated the policies were then worth about $1,000. (According to their cash surrender value clauses they had a value of $929.) He admitted that at the time of the trial he had no property. He confessed the judgment in favor of the plaintiff for the amount of a shortage in his official accounts,—a shortage which was paid to Scott county by the plaintiff as surety on his bond as treasurer.

The testimony of Mrs. Moore corroborated that of her husband. She said that the policies were transferred and delivered to her, as stated by him, in payment of personal moneys she put up for him, and upon his promise to pay the premiums on the policies; that she had since retained and held the policies in her exclusive possession; and that she thought that substituting her as the beneficiary was all that was necessary to be done to make her entitled to the proceeds.

This is all of the pertinent and material evidence. The plaintiff offered none in contradiction, and its contention is merely an innuendo drawn from the circumstances, especially the circumstance that the transaction was between husband and wife.

██ ██ The conclusion of the learned chancellor, who saw and heard the witnesses testify, is entitled to peculiar weight and consideration. The evidence in the record sustains that conclusion, and, in the absence of contradiction thereof, or any indication in the demeanor and conduct of the witnesses, while on the stand, that their testimony was false, he could not disregard it.

Virginia Code, 1936, section 5767, in effect since 1903, provides that, ''A policy of insurance on life, * * * may be lawfully assigned to any one, for a valuable consideration, as any other chose in action, * * * and the assignee may recover upon it whatever the insured might have recoverd but for such assignment.''

██ The evidence is that the written request of Moore that his wife be made beneficiary was intended to be an absolute and unconditional written assignment. An assignment of a chose in action, however, may be made by delivery without writing or other formalities. Such an assignment is valid if the assignor parts with his power of control over the chose in action, and it is shown that he intended the surrender to be irrevocabl.e Provisions of an insurance policy requiring written notice of an assignment or a change of beneficiary to be given to the insurer are for the benefit of the insurer. *Coffman* v. *Liggett's Adm'r,* 107 Va. 418, 59 S. E. 392; *Ingersoll* v. *Pond,* 108 Va. 179, 60 S. E. 738. Note: 1 Va. Law Reg. (N. S.) 587; 4 Am. Jur., Assignments, section 85; 29 Am. Jur., Insurance, section 509.

It follows that the decree of the trial court must be affirmed.

*Affirmed.*